UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>JOHN MICHAEL VAZQUEZ<br>UNITED STATES DISTRICT<br>JUDGE | FRANK R. LAUTENBERG<br>POST OFFICE AND<br>COURTHOUSE<br>2 FEDERAL SQUARE,<br>ROOM 417<br>NEWARK, NJ 07102<br>973-297-4851 |

April 22, 2016

VIA ECF

## LETTER OPINION AND ORDER

Re:   Krystal Kirkland v. Carolyn Colvin, Acting Commissioner of Social Security
      Civil Action No. 13-5441

Dear Litigants:

Plaintiff Krystal Kirkland ("Plaintiff") appeals the final decision of the Commissioner of Social Security, which denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Ordinarily, such appeals focus on whether there was substantial evidence to support the Commissioner's ruling. Plaintiff, however, has focused on new medical evidence that she first submitted with her brief to this Court. D.E. 23. Because Plaintiff is proceeding *pro se*,[1] this Court also independently reviewed the record to determine whether the Commissioner's decision was supported by substantial evidence. For the reasons that follow, the Court does not remand this matter for consideration of the newly-submitted evidence. The Court also finds that there was substantial evidence to support the Commissioner's determination and, as a result, affirms the Commissioner's determination.

On May 26, 2010, Plaintiff filed an application for DIB and SSI pursuant to Title II and Title XVI of the Act. Plaintiff alleged a disability beginning on August 2, 2008, when Plaintiff was 22-years old. Plaintiff claimed that she injured herself when she picked up baggage while working at an airport. Pursuant to Section 216(i) of the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 416(i)(1). Moreover, as to the DIB claim, Plaintiff's insured status requirements resulted in her being insured through June 20, 2010.

---

[1] Plaintiff was represented by counsel in the proceedings before the Administrative Law Judge.

Plaintiff's claims were initially denied on October 14, 2010 and upon reconsideration on May 10, 2011. Plaintiff then filed a request for a hearing, which was held before April M. Wexler, Administrative Law Judge (the "ALJ") on March 12, 2012. In a decision dated March 29, 2012, the ALJ found that Plaintiff was not disabled. On July 13, 2013, the Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's ruling the final decision of the Commissioner. This appeal followed.

In reaching her decision, the ALJ followed the five-step sequential evaluation process as required by 20 C.F.R. §§ 404.1520(a) and 416.920(a).[2] The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 2, 2008, the alleged onset date. The ALJ also ruled that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spines as well as obesity. The ALJ determined, however, that the evidence did not support a finding of substantial impairment for the following: chronic fatigue syndrome, fibromyalgia, carpal tunnel syndrome, and adjustment disorder. The ALJ next indicated that the severe impairments, whether alone or in combination, did not meet or medically equal the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Plaintiff's residual functional capacity, pursuant to 20 C.F.R. § 404.1567(a) permitted her to perform sedentary work with specific limitations set forth by the ALJ. The ALJ found that while Plaintiff had underlying physical impairments that could reasonably be expected to produce the claimant's pain or other symptoms, Plaintiff also had credibility issues concerning the intensity, persistence, and limiting effects of the symptoms. For example, the medical evidence indicated that as of May 4, 2009, Plaintiff indicated that she was improving, she was performing physical therapy resulting in increased mobility, she no longer used a cane, and her neck issues had resolved. A prior MRI in February 2009 of Plaintiff's cervical and thoracic spine was essentially normal. A March 2010 MRI showed mild bulging, without compression, of three cervical vertebrae. A July 1, 2010 report reflected that Plaintiff had a normal gait as well as a normal range of motion in all limb and trunk joints and no evidence of sensory deficits. An orthopedic consultative examination revealed the same but with some limits in Plaintiff's flexion and extension of the lumbar spine as with rotation of the cervical spine.

During the hearing before the ALJ,[3] expert testimony was also taken from a medical doctor and a vocational expert. The medical expert found that Plaintiff did not meet any listed impairments and that Plaintiff's "complaints seemed far in excess of the objective findings." D.E. 20-2 at 72. The physician concluded that Plaintiff should not have any limitation in sitting, that she could stand and walk for two to four hours during an eight-hour work day, that she might have some limitations in the fine use of her left-hand, and that she could lift and carry up to ten pounds. In light of Plaintiff's residual functional capacity, age, education, and work experience, the ALJ decided that Plaintiff could not return to her past work. However, in light of the vocational expert's testimony, the ALJ found that Plaintiff could work in three different jobs, each of which had thousands of positions in the national economy and hundreds in the local economy.

---

[2] The discussion concerning the ALJ's opinion is taken from the March 29, 2012 decision. D.E. 20-2 at 24-35.

[3] The transcript from the March 12, 2012 hearing can be found at D.E. 20 at 40-88.

In reviewing a final decision of the Commissioner, the Court exercises plenary review over legal issues. *Matthews v. Apfel*, 239 F.3d 589, 591 (3d Cir. 2001). An ALJ's findings, including credibility determinations, must be upheld if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation omitted). Such evidence is less than a preponderance but more than a mere scintilla. *Id.* The Court reviews the record as a whole to determine whether an ALJ's finding is supported by substantial evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citation omitted).

However, as noted, Plaintiff's brief does not argue that the ALJ's decision was unsupported by substantial evidence. Instead, Plaintiff points to new medical evidence for the period from June 27, 2012 through April 10, 2014. D.E. 23 at 8-30. This information is not part of the record on appeal. In fact, the ALJ's decision was rendered on March 29, 2012, approximately three months *before* the earliest date found in the new evidence.

In reviewing the Commissioner's final determination, a court may only rely upon the "pleadings and transcript of the record." 42 U.S.C. § 405(g). As a result, a court cannot reverse the Commissioner's decision due to evidence not in the record. A court can, nevertheless, remand the matter so that the ALJ can consider new evidence. *Matthews*, 239 F.3d at 593. However, the new evidence must be material and a party must demonstrate good cause for failing to incorporate the evidence into the prior proceeding. 42 U.S.C. § 405(g). Evidence is new if it is not merely cumulative of the information already in the record. *Szubak v. Secretary of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Materiality means that there is a "reasonable possibility" that the evidence would have changed the outcome of the Commissioner's decision. *Id.* Critically, implicit within the materiality requirement, is that the new evidence must "relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.* (citing *Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir. 1982)).

Here, Plaintiff's new evidence fails to meet the materiality requirement since it is beyond the time period for which her benefits were denied. The relevant time period for DIB in this matter is August 2, 2008 (the alleged onset date) through June 30, 2010 (the date that she was last insured under the Act). The relevant time period for SSI is August 2, 2008 through March 29, 2012 (the date of the ALJ's decision). Plaintiff's new evidence begins on June 27, 2012, nearly two years after the DBI period and three months after the SSI period.[4]

---

[4] Plaintiff's new medical evidence stems from Alex Moroz, M.D. Dr. Moroz was seeing Plaintiff for the workman's compensation claim that Plaintiff filed after injuring her back at work on August 2, 2008. Plaintiff relies heavily on Dr. Moroz's opinion that Plaintiff reached a maximum medical improvement demonstrating a 25% impairment in Plaintiff's neck and low back. Such a finding is not binding on the Commissioner because, as a matter of law, the Commissioner is empowered to make the final decision concerning disability. *See Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). Importantly, the new evidence reveals that Plaintiff's condition has at least remained stable since the ALJ's decision if not actually improved. The medical evidence reveals that Plaintiff is walking up to three miles a day and also gardening, D.E. 23 at 22, activities which Plaintiff indicated she could not do at the time of the ALJ hearing.

3

The ALJ's decision is also supported by substantial evidence. The medical expert testified that while Plaintiff has some limits, her subjective complaints were far in excess of the objective medical evidence. A January 2010 MRI of Plaintiff's neck showed normal results except for "[m]ild noncompressive ventral disc bulging, C4-C5, C5-C6, and C6-C7." D.E. 20-7 at 590. A February 4, 2009 MRI of the cervical and thoracic spine was also normal except for "[m]ild nonspecific prominence of the central canal of the C7 level." *Id.* at 595. A September 2014 consultative medical examination reflected that Plaintiff walked with a normal gait, could dress herself and mount the exam table, and could squat. D.E. 20-8 at 612-13. Plaintiff had normal range of motion on flexion and extension in the cervical and thoracic spine, while she had a mild limitation in the lumbar spine. *Id.* A neurological examination in 2010 found that Plaintiff was "awake, alert, and oriented x 4 with intact recent memory, attention, concentration, language function, and a normal fund of knowledge." D.E. 20-7 at 461-463. Moreover, Plaintiff's strength in all tested areas was 5/5, she had proper sensation and reflexes, and she had a normal gait. *Id.*

For the foregoing reasons, the Commissioner's final decision was supported by substantial evidence and the Court does not remand this matter for the consideration of Plaintiff's new evidence.

The Court **AFFIRMS** the Commissioner's final decision and the Clerk shall serve a copy of this opinion and order on Plaintiff by certified mail return receipt.

**SO ORDERED.**

                                                                    JOHN MICHAEL VAZQUEZ
                                                                    UNITED STATES DISTRICT JUDGE

---

During the exam, Plaintiff's gait was normal without an assistance device. *Id.* at 23. Plaintiff's neck had minimal limits with extension and side-bend while here flexion and rotation were normal. *Id.* at 22. She had mild tenderness in certain portions of her back while other areas showed no tenderness. *Id.* at 22-23. The range of motion in Plaintiff's shoulders, elbows, wrists, fingers, hips, knees, and ankles was normal. *Id.* at 23. Finally, her strength was 5/5 in all areas tested. *Id.*

4